IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

| | |
|---|---|
| LEWIS E. STOTESBURY, and <br> MARCELLUS R. TYLER, Jr., <br><br> Plaintiffs, <br><br> vs. <br><br> PIRATE DUCK ADVENTURE, LLC, a Virgin Islands limited liability company, and MICHAEL BAIRD, <br><br> Defendants. <br><br> AMBROSE, Senior District Judge | No. 3:11-cv-00018 |

## OPINION

Pending is a Motion for Summary Judgment filed by Defendants Pirate Duck Adventure, LLC ("Pirate Duck") and Michael Baird ("Baird") (Docket No. 129). Plaintiffs oppose Defendants' Motion. (Docket No. 131). After careful consideration and for the reasons set forth below, the Motion for Summary Judgment is denied.

### I. Background

**A.   Factual Background**

This is a personal injury case brought by two passengers (Lewis Stotesbury and Marcellus Tyler, Jr.)[1] aboard an amphibious bus called the "Duckaneer" that crashed due to a total failure of both the brakes and the emergency brakes on a road overlooking Lindbergh Bay on St. Thomas on July 1, 2009. The Duckaneer had the same air brake system used on normal, land-based heavy commercial trucks and buses.

Jurisdiction is based on diversity of citizenship. Stotesbury is from North Carolina; Tyler is from Maryland; and the Murphys are from New Hampshire. Defendant Pirate Duck is a limited liability company organized and existing under the law of the United States Virgin Islands

---

[1] Two other original Plaintiffs, Kathleen and Karen Murphy, were dismissed from the case due to settlement. See Docket No. 119.

1

and is the owner and operator of the Duckaneer. Defendant Baird, a citizen of the Virgin Islands, was the local member of the tour business, responsible for the day-to-day operations and for maintenance and repair.

At the time of the collision, Plaintiffs were visiting the Virgin Islands as passengers aboard the Royal Caribbean cruise ship Freedom of the Seas during a one-week round-trip Eastern Caribbean cruise originating from Port Canaveral, Florida. Prior to the cruise, Plaintiffs were provided with the standard Royal Caribbean Cruise/Cruise Tour Ticket Contract. See Docket No. 129-1, Ex. A. Once onboard the ship, Plaintiffs purchased from Royal Caribbean a "shore excursion ticket" for an amphibious tour of St. Thomas aboard the "Duckaneer." Pirate Duck was an independent contractor of Royal Caribbean.

The July 1, 2009 accident occurred as the Duckaneer was traveling down a steep hill and both its primary brakes and emergency brake failed. Plaintiff Stotesbury suffered injuries in the crash. Plaintiff Tyler stated that he lacerated his foot after jumping down from the craft to tend to his children who had been ejected from the vehicle in the crash. Plaintiffs allege that Defendants were negligent or grossly negligent because they knew that the braking system on the Duckaneer was dangerously unreliable but nevertheless continued to operate the vehicle on the steep and hilly roads of St. Thomas, recklessly placing its passengers and other members of the public at risk of serious bodily injury or death. In addition to damages for their alleged personal injuries, Plaintiffs also seek punitive damages.

### B. Procedural History

Plaintiffs filed their Complaint in this action in this Court on February 11, 2011. (Docket No. 1). Plaintiffs filed a First Amended Complaint on March 4, 2011. (Docket No. 6). On August 30, 2011, I denied Defendants' motions to dismiss the First Amended Complaint. (Docket No. 69). With leave of Court, Plaintiffs filed a Second Amended Complaint on August 20, 2012 (Docket No. 120), and, upon reconsideration, a Third Amended Complaint on September 6, 2012. (Docket No. 127). Defendants filed an Answer to the Third Amended

Complaint on September 20, 2012. (Docket No. 128). On September 28, 2012, Defendants filed the instant Motion for Summary Judgment. (Docket No. 129). Plaintiffs opposed Defendants' Motion. (Docket Nos. 131-135, 139). Defendants filed a reply brief on November 29, 2012. (Docket No 145). The motions are now ripe for my review.

## II. Legal Analysis

### A. Legal Standard

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

### B. Motion for Summary Judgment

In the summary judgment motion, Defendants argue that: (1) Plaintiffs' claims are time-barred by a binding one-year limitations period imposed by their cruise ticket contracts with Royal Caribbean; (2) Plaintiff Tyler's injury was not proximately caused by the incident; and (3) there is no basis for gross negligence or punitive damages. (Docket No. 129). Plaintiffs oppose Defendants' arguments in their entirety, and I will address each in turn.

#### 1. Statute of Limitations

Defendants argue that they should receive the benefit of a one-year limitations period for filing claims set forth in Section 10(a) of the Cruise Ticket Contracts between Plaintiffs and Royal Caribbean.[2] Specifically, Defendants contend that Plaintiffs agreed in Section 2(b) of the Cruise Ticket Contract that the one-year limitations period applied to all claims against independent contractors, including Pirate Duck. Section 2(b) provides, in relevant part:

> The exclusions or limitations of liability of Carrier set forth in the provisions of this Ticket Contract, as well as all rights, defenses or immunities set forth herein, shall also apply to and be for the benefit of agents, independent contractors, concessionaires and suppliers of Carrier . . . .

See Docket No. 129-1, Ex. A, § 2(b). Plaintiffs disagree, arguing that the contractual language at issue is, at best, ambiguous as to its applicability and, therefore, must be construed against

---

[2] Pirate Duck and Baird have attached a copy of the Cruise/Cruise Tour Ticket Contract as Exhibit 1 to their motion for summary judgment. (Docket No. 129-1, Ex. A). Section 10(a) of the Cruise Ticket Contract provides:

> 10. **NOTICE OF CLAIMS AND COMMENCEMENT OF SUIT OR ARBITRATION; SECURITY:**
> a.  TIME LIMITS FOR PERSONAL INJURY/ILLNESS/DEATH CLAIMS:  NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER, THE VESSEL OR THE TRANSPORT FOR PERSONAL INJURY, ILLNESS OR DEATH OF ANY PASSENGER UNLESS . . . SUIT IS COMMENCED (FILED) WITHIN ONE YEAR FROM THE DATE OF SUCH INJURY, ILLNESS OR DEATH AND PROCESS SERVED WITHIN 120 DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OR ANY STATE OR COUNTRY TO THE CONTRARY.

Docket No. 129-1, Ex. A, § 10(a).  The parties do not dispute that Section 10(a) is valid and enforceable with respect to Royal Caribbean or that Plaintiffs filed their Complaint outside the one-year limitations period.  The sole issue is whether Section 10(a)'s one-year time limitation applies to Defendants as third parties pursuant to Section 2(b).

4

Defendants.  After careful consideration, I find that the one-year statute of limitations in the Royal Caribbean Cruise Ticket Contract does not extend to Defendants in this case.

Because the subject matter of the Cruise Ticket Contract is maritime in nature, maritime contract law applies here.  See Sharpe v. West Indian Co., Ltd., 118 F. Supp. 2d 646, 648-49 (D.V.I. 2000) (citing, inter alia, Hodes v. S.N.C. Achille Lauro, 858 F.2d 905, 909 (3d Cir. 1988)).  To determine the enforceability of a time limitation clause, I must look at whether the Cruise Ticket Contract contained adequate warnings directing the passenger to read the terms inside the ticket as well as whether the physical characteristics of the terms, such as the location and size of the warnings, the size of the typeface in which they are printed, and the simplicity of the language, meet the "standard of reasonable communicativeness."  Id. at 649 (citing Marek v. Marpan Two, Inc., 817 F.2d 242, 245 (3d Cir. 1987)); see also Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 130 (3d Cir. 2002).  Whether the terms and conditions of a cruise ship contract were reasonably communicated to the passenger is a question of law for the Court.  Sharpe, 118 F. Supp. 2d at 649 (citing Hodes, 858 F.2d at 908).  In addition, if I find that one or more contractual provisions are subject to multiple reasonable meanings, I must favor the meaning that least benefits the drafter.  Id. at 650 n.4; see also id. at 653 (ambiguities in a contract are construed against its drafter).

In this case, I agree with Plaintiffs that Section 2(b) of the Cruise Ticket Contract is ambiguous with respect to time limits on passenger suits against independent contractors.  As this Court stated in construing a substantially similar Royal Caribbean Cruise Ticket contract provision in Sharpe, the clause "is simply too broad and cannot mean what it purports to say, namely, that all of the exclusions and limitations which protect Royal Caribbean, as carrier, also protect and apply to independent contractors."  118 F. Supp. 2d at 652; see also id. ("The Court agrees that [the] clause . . . is ambiguous when read in the overall context of the contract because it fails to specify which limitations of liability extend to which third parties and with respect to what sorts of incidents.").  Among the clauses that are ambiguous or meaningless

5

when applied to Defendants are: Clause 3(c) (limiting the Carrier's liability for loss or damage to property for the cruise unless the passenger declares the property's true value in writing and pays the Carrier a 5% fee); 3(d) (limiting the Carrier's liability for loss or damage to items such as eyeglasses and dental hardware unless they are deposited with the Carrier on the Vessel for safekeeping); Clause 5 (limiting Carrier's liability for harm to Passenger resulting from acts of independent contractors on or off vessel); and Clause 9(a) (requiring all disputes under the Cruise Ticket Contract to be litigated in southern Florida). Plaintiffs should not have to guess as to which "exclusions" or "limitations of liability" Section 2(b) was meant to apply.  See Sharpe, 118 F. Supp. 2d at 653.

I further agree with Plaintiffs that the Cruise Ticket Contract does not reasonably communicate that suits against independent contractors are subject to a one-year limitations period.  As an initial matter, it is undisputed that Section 10(a) does not mention independent contractors in connection with the one-year time limit.  Moreover, unlike Section 10(a), Section 2(b) is not one of the four sections to which the "IMPORTANT NOTICE TO GUESTS" at the beginning of the Cruise Ticket Contract expressly refers the passengers.[3]  Furthermore, although Section 10 of the contract containing the one-year limitations period is printed conspicuously in all caps, the language allegedly extending that limitations period to independent contractors is buried in fine print in Section 2(b) of the "Definitions" section of the Contract.  There is no language in any highlighted section of the Contract that cautions passengers that injury claims against independent contractors such as Defendants would be

---

[3] The "Important Notice to Guests" is located at the top of the first page of the Cruise Ticket Contract and reads as follows:

> YOUR CRUISE/CRUISETOUR TICKET CONTRACT CONTAINS IMPORTANT LIMITATIONS ON THE RIGHTS OF PASSENGERS.  IT IS IMPORTANT THAT YOU CAREFULLY READ ALL TERMS OF THIS CONTRACT, PAYING PARTICULAR ATTENTION TO SECTION 3 AND SECTIONS 9 THROUGH 11, WHICH LIMIT OUR LIABILITY AND YOUR RIGHT TO SUE, AND RETAIN IT FOR FUTURE REFERENCE.

Docket No. 129-1, Ex. A, at 1.

subject to any special time limits of the Cruise Ticket Contract.[4]  For this additional reason, I cannot enforce the one-year limitations period against Plaintiffs in this case.

Defendants' reliance on Levick v. Steiner Transocean Ltd.,377 F. Supp. 2d 1251 (S.D. Fla. 2005), is unpersuasive.  In Levick, the United States District Court for the Southern District of Florida enforced a one-year limitation period contained in a Carnival Cruise Line ticket contract in a slip-and-fall case brought by a cruise ship passenger against an independent contractor who provided spa services aboard the ship.  Id. at 1252-53, 1257.  Paragraph 1(e) of the cruise ticket contract in Levick stated, inter alia, that "all rights, exemptions from liability, defenses and immunities shall also be inured to the benefit of . . . independent contractors, including . . . health and beauty staff, . . . and other concessionaires."  Id. at 1256.  The Levick court concluded that the defendant, a masseuse concessionaire, fell within the meaning of Paragraph 1(e) and, therefore, could benefit from the ticket contract's one-year limitations period.  Id. at 1255-56.  The court further found that the limitations clause was not ambiguous as applied to the defendant.  Id. at 1256-57.

Even if the holding in Levick was binding on this Court, which it is not, the facts in Levick are distinguishable from those in this case.  Importantly, page one of the Carnival Cruise Ticket Contract in Levick contained introductory language in all caps that "especially directed" passengers "to clauses 1 and 13 through 17 of the contract."  Id. at 1255, 1257 & n. 2-3.  Unlike the contract at issue in this case, these clauses specifically included the section extending limitations of liability and exclusions to independent contractors (paragraph 1(e)).  The introductory language in the Levick contract further warned passengers that those particular clauses contained "important limitations on the rights of guests to assert claims against Carnival Cruise Liner, the Vessel, *their agents and employees, and others.*"  Id. (emphasis added).  In

---

[4] Although Defendants are correct that the absence of such conspicuous language is not an automatic bar to the enforcement of a one-year time limitation, I find it to be important under the facts of this case where the issue is not the enforceability of the time limitation itself, but the extension of that limitation to third parties such as independent contractors.

7

contrast, the introductory language in the contract at issue here discusses only Royal Caribbean's liability and the passenger's right to sue. See supra n.3.

The facts and the contractual language at issue in this case more closely resemble the contractual language and facts at issue in Sharpe than in Levick. The Levick court itself distinguished Sharpe, finding that, unlike in Sharpe, the contract at issue in Levick clearly notified passengers of the types of liability exclusions and the types of entities who may benefit from the exclusions. Levick, 377 F. Supp. 2d at 1256-57. As set forth above, Sharpe is a Virgin Islands case involving the same cruise line and a substantially similar cruise ticket contract. See Sharpe, 118 F. Supp. 2d at 649, 652 & n.3.[5] For this and all the reasons set forth above, I find that the one-year limitations period contained in the Royal Caribbean Cruise Ticket Contract does not apply to Defendants in this case. Accordingly, Defendants' Motion for Summary Judgment on this issue is denied.

### 2. Negligence -- Proximate Causation as to Plaintiff Marcellus Tyler, Jr.

Pirate Duck and Baird next argue that Plaintiff Tyler's negligence claim must be dismissed because the crash of the Duckaneer did not proximately cause Tyler's injuries. Defs.' Br. (Docket No. 129) at 12-13. In support, Defendants point to Tyler's deposition testimony in which he admits that he did not suffer any injuries in the crash itself, but, rather, hurt his foot immediately thereafter when he jumped out of the vehicle to attend to his children who had been thrown from the Duckaneer and were lying on the ground beneath. Tyler does not dispute this course of events, but argues that his claim survives summary judgment under, inter alia, the "rescue doctrine" set forth in the Restatement (Second) of Torts § 445. Pls.' Br. (Docket No.

---

[5] If anything, the contractual provision at issue here is more problematic than that at issue in Sharpe. Although the actual language of the two provisions is nearly identical, the independent contractor clause in Sharpe was not buried in fine print in the ticket contract's definitional section. Rather, the clause was printed in all caps and bold, and located within the same main paragraph as the one-year time limitation. See Sharpe, 118 F. Supp. 2d at 652 (one-year time limitation was contained in clause 13(b) and independent contractor language in clause 13(d)). Despite the prominence of this language, the Sharpe court firmly concluded that the language was ambiguous and that limitations period was unenforceable by Defendant.

131) at 17-18.[6]

Traditional tort law has long recognized the applicability of the "rescue doctrine" in negligence cases. Under the rescue doctrine, a tort-feasor may be liable for injuries to a rescuer on the theory that when the tort-feasor places someone in peril, it is foreseeable that others may try to assist that person. See, e.g., Bole v. Erie Ins. Exchange, 50 A.3d 1256, 1259-1261 (Pa. 2012). As set forth in section 445 of the Restatement (Second) of Torts, "[i]f the actor's negligent conduct threatens harm to another's person, land, or chattels, the normal efforts of the other or a third person to avert the threatened harm are not a superseding cause of harm resulting from such efforts." Restatement (Second) Torts § 445; see also id. § 443 ("The intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about."); Sealey-Christian v. Sunny Isle Shopping Ctr., Inc., S. Ct. Civ. No. 2008-062, 2009 WL 4543321, at *12, n.14 (V.I. 2009) ("An 'intervening cause which is foreseeable or a normal incident of the risk created by a tortfeasor's action does not relieve the tortfeasor of liability.'" (quoting Thabault v. Chait, 541 F.3d 512, 526 (3d Cir. 2008))) . In the oft-quoted words of Benjamin Cardozo:

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. *The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid.* The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. . . . The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man.

---

[6] In their Reply Brief (Docket No. 145), Defendants do not respond to Plaintiffs' arguments regarding Tyler's negligence claim or otherwise address that claim. The cases on which Defendants rely in their opening brief are factually distinguishable and inapposite. See, e.g., Chelcher v. Spider Staging Corp., 892 F. Supp. 710, 716-18 (D.V.I. 1995) (products liability case in which scaffolding manufacturer's failure to warn was not a substantial factor in bringing about harm to a worker; substantial contributing factors to injury included worker's negligence and the employer's misrigging of the scaffold and failure to supervise the worksite).

9

Wagner v. Int'l R. Co., 133 N.E. 437, 437-38 (N.Y. Ct. App. 1921) (emphasis added) (citations omitted). Defendants do not dispute that the rescue doctrine and/or the above Restatement sections apply in this jurisdiction. Indeed, Defendants declare in their brief that the Restatement "is controlling and furnishes the substantive law in the Virgin Islands." Defs.' Br. (Docket No. 129) at 13 n.3.

Among the record evidence in this case is testimony and documentation that: the Duckaneer came to rest 8-10 feet high atop a concrete wall after the crash and was leaning precariously against a building; passengers were lying about and screaming in the immediate aftermath; Tyler's own children had been ejected from the vehicle and were lying on the parking lot below; Tyler was afraid the Duckaneer would tip over onto his children so he jumped down to tend to them, cutting his left foot in the process; and Tyler had lost his left shoe in the crash, but did not realize that before he jumped. See, e.g., Pls.' Statement Mat. Facts, Exs. 7 (Hough Dep. at 72-74); 8 (V.I. Police Dep't Photo of crash scene); 9 (Jarvis Dep. at 16); 10 (Tyler Interrog. Ans. 2). With the above law in mind, and viewing this record evidence in the light most favorable to Tyler, I find that there are genuine issues of material fact as to proximate causation that preclude me from entering summary judgment in favor of Defendants on Tyler's negligence claim.[7] Accordingly, Defendants' Motion for Summary Judgment as to Tyler's negligence claim is denied.

### 3. Factual Basis for Gross Negligence or Punitive Damages

Pirate Duck and Baird argue that Plaintiffs' gross negligence and punitive damages claims must be dismissed because (1) there is no evidence of reckless, wanton, or outrageous conduct sufficient to support such claims and (2) the punitive damages claim is barred pursuant to the Cruise Ticket Contract. Defs.' Br. (Docket No. 129) at 13-16. Defendants' arguments are

---

[7] Defendants also argue that Tyler's claim fails because he was more than 50% responsible for the cut he sustained and all resulting damages. Defs.' Br. (Docket No. 129) at 12-13. Based on the record evidence, this, too, is a question more appropriately resolved by the fact-finder.

without merit.

As an initial matter, to the extent that Defendants point to the language of the Cruise Ticket Contract as a bar to recovery of punitive damages, that argument fails for the same reasons set forth in Section II.B.1, supra.

Defendants' arguments based on the sufficiency of the evidence are likewise unpersuasive. Defendants cite Tutein v. Parry, No. SX-00-CV-080, 2006 WL 3842108 (V.I. Super. Ct. Oct. 24, 2006), for the proposition that gross negligence requires "reckless" or "wanton" conduct, meaning the defendant must exhibit "a conscious indifference to the consequences of his conduct or act so unreasonable that imminent likelihood of harm or injury to another is reasonably apparent." Id. at *4. To recover punitive damages in the Virgin Islands, a party must "allege facts demonstrating that the defendant acted outrageously and with an evil motive or with a reckless indifference to the rights of others." Francis v. Bridgestone Corp., Civ. No. 2010/30, 2011 WL 2650599, at *12 (D.V.I. July 6, 2011). Accepting Defendants' formulation of Virgin Islands' law for purposes of this motion, I find that genuine issues of material fact exist that preclude summary judgment on these claims.

In support of their motion, Defendants point to Baird's deposition testimony and other record evidence that they claim undisputedly establish that: the Duckaneer had no prior incidents of brake failure; Baird made consistent efforts to maintain the brakes; drivers conducted daily operational tests of the brakes; and no braking issues were apparent on the date of the accident. Defs.' Br. (Docket No. 129) at 13-15; Defs.' Reply (Docket No. 145) at 7-8. Defendants further contend that while Duckaneer's alleged brake issues and/or any failure of Defendants to inspect or properly maintain the Duckaneer may constitute ordinary negligence, such facts do not support a finding of gross negligence. See id. I disagree.

As Plaintiffs point out in their opposition brief, the facts relevant to these issues are not undisputed. Among other evidence, Plaintiffs cite testimony and documentation showing that:

- Duckaneer drivers Matthews and Hough were not required to test the emergency

11

> brakes as part of a standard pre-trip inspection and neither did so;
> 
> - Post-accident inspections of the Duckaneer by experts from both sides revealed severe brake damage that predated the accident;
> 
> - Driver Matthews told Baird on a number of occasions prior to the accident that he had lost air pressure to the brakes while parking, or the brakes became "mushy" on tour, but the problem did not resolve; and
> 
> - Driver Hough reported a similar loss of air pressure while parking, but Baird told him it was normal; Hough asked Baird at least five times to drive the vehicle to verify the brakes were working correctly, but Baird refused.

See Pls.' Br. (Docket No. 131) at 18-20 (citing statement of material facts and attached record evidence). In addition, Plaintiffs point to evidence that within two weeks prior to the accident, the Duckaneer experienced total or near-total brake failure on at least two occasions. According to the deposition testimony of crewmember/tour guide Benjamin Chapman, on one such occasion, Baird and the driver unsuccessfully attempted to make brake repairs on the Duckaneer prior to a tour. Pls.' Stmt. Mat. Facts ¶¶106-109 & Ex. 13 (citing Chapman Dep. at 16-24). Over the protests of Chapman and the driver, Baird nevertheless ordered a truncated version of the tour to proceed and told the driver to falsely announce to the passengers that a road was closed preventing the full land-based portion of the tour. Id. Plaintiffs' expert Les Miller also opined that the Duckaneer had extreme safety problems with its rear brakes that prevented the emergency brakes from working and that would have been obvious to any person qualified to inspect or repair air brakes. Id. ¶¶ 116-117 & Ex. 15 (citing Miller Dep. at 157-158).

In short, whether Plaintiffs can prevail on their gross negligence claim and/or are entitled to punitive damages will turn on credibility determinations and factual conflicts appropriately resolved by the fact finder at trial. Because genuine issues of material fact abound, Defendants' Motion for Summary Judgment on these claims is denied.

## III. **CONCLUSION**

For all of the reasons set forth above, Defendants' Motion for Summary Judgment is denied in its entirety. A telephonic pretrial conference is scheduled for July 1, 2013, at 11:30 a.m. before the undersigned. Plaintiffs' counsel shall initiate the call and shall call the Court at 412-208-7350 once participants for all parties are on the line. Counsel shall have settlement authority, and the parties also shall be available by telephone.